United States District Court
Southern District of Texas
ENTERED

FEB 1 1 2003

Michael N. Milby, Clerk of Court
By Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| MARY E. CARRANZA, Individually and as Next Friend of ANGEL MATTHEW GONZALEZ, GUSTAVO GONZALEZ, JR., and ALYSSA LAUREN GONZALEZ, Minor Children, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF LA FERIA, TEXAS, et al., <br><br> Defendants. | CIVIL ACTION NO. B-02-180 |

## ORDER

BE IT REMEMBERED, that on February 10, 2003, the Court considered the Defendants City of La Feria, Texas, Officer Gerardo "Jerry" Ramirez, and Valley Baptist Medical Center's Motions to Dismiss For Failure to State a Claim [Dkt. Nos. 2, 3, & 8]. Defendants' Motions are **GRANTED in part** and **DENIED in part**.

### Factual and Procedural Background

Mary E. Carranza, the deceased's spouse, Celia Muniz Gonzalez, the deceased's mother, and the deceased's minor children bring this lawsuit alleging constitutional violations under 28 U.S.C. § 1983 and violations of the Texas Tort Claims Act ("TTCA"). See Plaintiffs' Complaint, at ¶¶ 2-3 [Dkt. No. 1]. In addition, Gustavo Gonzalez, the father of the deceased, intervenes in this suit under the Texas Wrongful Death Act and also alleges constitutional violations under section 1983 and violations of the Texas Tort Claims Act. See Intervenor's Complaint [Dkt. No. 1].[1] Plaintiffs and the intervenor allege the City

---

[1] Defendants filed two Motions to Dismiss –one in support of dismissal of the Plaintiffs' original complaint and the other in support of dismissal of the intervenor's plea

1

of La Feria, Texas, the La Feria Police Department, Officer Ramirez in his official and individual capacity, and Valley Baptist Medical Center ("VBMC") violated the deceased's Fourth, Eighth, and Fourteenth Amendment rights while the deceased was in custody.

Plaintiffs allege that on September 17, 2000, the deceased, Gustavo Gonzalez, was arrested for evading arrest by officers of the La Feria Police Department. Plaintiffs' Complaint, at ¶ 17. During this arrest, Gonzalez was injured and subsequently taken to the VBMC for treatment. Gonzalez remained in custody under police guard while he underwent treatment at VBMC.[2] On September 19, 2000, La Feria Police Officer Gerardo "Jerry" Ramirez was the posted guard on duty. Early in the morning on this date, Officer Ramirez and Gonzalez allegedly became involved in an "altercation," and Gonzalez was shot several times resulting in his death. Id. at ¶ 22. The parties agree that during this physical encounter, Gonzalez was handcuffed to his bed.

Plaintiffs have not filed a response to Defendants' Motions to Dismiss. Pursuant to Local Rule 7.4, failure to respond is interpreted as a representation of no opposition. Nevertheless, the Court conducts a thorough review of Defendants' Motions to Dismiss and makes a determination based on the merit of Defendants' arguments. During oral arguments in the initial pretrial conference, the parties agreed the Court could, in its discretion, hold the pending Motions to Dismiss in abeyance. The parties stated this would allow for discovery on certain claims and enable Plaintiffs to respond to the Motions to Dismiss. Defendants, in turn, indicated this discovery would likely lead to a subsequent filing for Summary Judgment, or the submission of evidence, which would convert their Motion to Dismiss into a Motion for Summary Judgment. Regardless of any response to Defendants' Motions to Dismiss submitted to the Court in the future, the pleadings are inadequate as filed. The Court, therefore, has decided to dispose of the Motions to Dismiss, but where appropriate has granted the Plaintiffs leave to amend their pleadings.

---

of intervention. As Defendants' arguments are virtually identical in both Motions to Dismiss, the Court disposes of the motions together.

[2]Although Plaintiffs have not so plead, Defendants contend the deceased was a suspect in a murder, which necessitated 24-hour watch over him in the hospital.

2

Additionally, the Court has indicated Defendants may reurge their Motions to Dismiss after preliminary discovery is conducted.

### Rule 12(b)(6) Standard

A motion to dismiss for failure to state a claim is "viewed with disfavor and is rarely granted." Kennedy v. Tangipahoa Parish Library Bd. of Control, 224 F.3d 359, 365 (5th Cir. 2000); Lowrey v. Texas A & M University System, 117 F.3d 242, 247 (5th Cir. 1997) (quoting Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, 677 F.2d 1045, 1050 (5th Cir. 1982)). Fifth Circuit law dictates that a district court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. See Baker v. Putnal, 75 F.3d 190, 196 (5th Cir. 1996). See also Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000). A complaint will not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). See also Baton Rouge Bldg. & Constr. Trades Council AFL-CIO v. Jacobs Constructors, Inc., 804 F.2d 879, 881 (5th Cir. 1986). The Fifth Circuit has held, however, that dismissal is appropriate "if the complaint lacks an allegation regarding a required element necessary to obtain relief." Blackburn v. City of Marshall, 42 F.3d 925, 931 (5th Cir. 1995) (citation omitted).

### Defendant Valley Baptist Medical Center's Motion to Dismiss

VBMC argues Plaintiffs' complaint should be dismissed because they fail to allege any facts suggesting VBMC or its agents committed acts or omissions constituting constitutional violations. In this regard, Plaintiffs do not argue VBMC is a state actor. Plaintiffs do allege in a cursory fashion, however, that VBMC "committed acts of omission and commission, which, collectively and severally, constituted negligence." See Plaintiffs' Complaint, at ¶ 42. The Court agrees with VBMC that this is not sufficient to state a claim upon which relief may be granted. During oral argument, however, VBMC stated that it was amenable to participating in limited and preliminary discovery, which would enable Plaintiffs to supplement their current pleading. As a result, at this juncture, VBMC's Motion to Dismiss is **DENIED**. Plaintiffs are **ORDERED** to amend their pleading with respect to

3

1:02cv180 #21    Page 3/13

VBMC by March 10, 2003. At that time, if Plaintiffs have neither amended their complaint against VBMC or voluntarily dismissed their complaint against VBMC, VBMC may reurge its Motion to Dismiss.

### Eighth Amendment Claim

Defendants argue Plaintiffs have failed to state a claim for relief under the Eighth Amendment because Eighth Amendment protection is only extended to convicted inmates. See Defendants' Motion to Dismiss, at p. 5 [Dkt. No. 2]. Claims that a police officer used excessive force against a pretrial detainee are analyzed under the Fourteenth Amendment's Due Process Clause and not under the Eighth Amendment. See Valencia v. Wiggins, 981 F.2d 1440, 1445 (5th Cir. 1993). See also Bell v. Wolfish, 441 U.S. 520, 536 (1979); Edwards v. Johnson, 209 F.3d 772, 778 (5th Cir. 2000). To the extent, therefore, that Plaintiffs' claims are brought under the Eighth Amendment, they are **DISMISSED**. The Court, however, will analyze Plaintiffs' claims under the Fourteenth Amendment's Due Process Clause. See infra, at p. 5 (discussing Plaintiffs' Fourteenth Amendment claim).

### Fourth Amendment Claim

Defendants argue that because Gonzalez was a pretrial detainee and not an arrestee, the Fourth Amendment does not provide him protection from excessive force. See Defendants' Motion to Dismiss, at p. 7 [Dkt. No. 2]. Pretrial detainees are protected by the Due Process Clause of the Fourteenth Amendment. See Brothers v. Klevenhagen, 28 F.3d 452, 455-56 (5th Cir. 1994); Valencia, 981 F.2d at 1445. "The point at which an arrest ends and pretrial detainment begins is not always clear." Gutierrez v. City of San Antonio, 139 F.3d 441, 452 (5th Cir. 1998) (citing Valencia, 981 F.2d at 1449 n.44). The Fifth Circuit stated in Valencia that the Fifth or Fourteenth Amendments begin to protect persons "*after* the incidents of arrest are completed, *after* the plaintiff has been released from the arresting officer's custody, and *after* the plaintiff has been in detention awaiting trial for a significant period of time.'" Id. (citing Valencia, 981 F.2d at 1443) (emphasis in original). For example, in Brothers, the Fifth Circuit found the pretrial detainee was

4

protected by the Fourteenth Amendment because he had been arrested and processed by the police department and had spent several hours in jail before the alleged incidents arose leading to an excessive force claim. See id. (citing Brothers, 28 F.3d at 452). Conversely, in Gutierrez, the Court found the detainee was protected by the Fourth Amendment because the alleged incident occurred soon after Gutierrez was seized at a place that was located near the spot where officers seized him. See id. Similarly, in Whiting v. Tunica County, 222 F. Supp. 2d 809, 823 (N.D Miss. 2002), the court determined the Fourth Amendment provided protection to a detainee whose post-arrest claim arose from alleged events that occurred in the police car on the way to the police station. The Whiting court differentiated the facts before it from those in Valencia because the incident occurred more closely in time to the actual arrest and Whiting was still in the custody of the arresting officer. See id.

The facts in the present case seemingly fall on a continuum between Valencia and Brothers at one end and Gutierrez and Whiting at the other end. Gonzalez was arrested on September 17, and the incident resulting in his death occurred during the early morning hours of September 19. Upon arrest, Plaintiff was immediately transported to VBMC, and, therefore, had not yet been processed by the police department when the alleged event occurred. It appears from Plaintiffs' pleading that Gonzalez had left the custody of the arresting officer. Keeping the factors discussed in Valencia in mind, Plaintiffs' claims are more appropriately analyzed under the Fourteenth Amendment –Gonzalez had left the custody of the arresting officer, the incident occurred two days after his arrest, and Gonzalez had already reached his first destination, VBMC. Despite the fact that Gonzalez had not yet been processed and he had not been detained for a "substantial" amount of time, his arrest was complete. Plaintiffs' claims are more suited to the Fourteenth Amendment than the Fourth Amendment. Plaintiffs' Fourth Amendment claims, therefore, are **DISMISSED**.

### Fourteenth Amendment Claim

Defendants argue Plaintiffs have failed to state a Fourteenth Amendment claim

5

because Valencia v. Wiggins requires the Court to inquire "whether the measure taken inflicted a necessary and wanton pain and suffering" and "'whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the purpose of causing harm.'" Valenica, 981 F.2d at 1446. See also Defendants' Motion to Dismiss, at p. 7 [Dkt. No. 2]. The inquiry Defendants reference focuses on the subjective intent of the officer and is measured by several objective factors, including: "'the need for the application of force'"; (2) the "threat 'reasonably perceived by the detention facility official'"; (3) "'any efforts to temper the severity of a forceful response'"; (4) "'[t]he extent of injury suffered by an inmate," which "may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation"; and (5) whether the force used "'evinced such wantonness with respect to the unjustified infliction of harm [that it] is tantamount to a knowing willingness that it occur.'" See Valencia, 981 F.2d at 1446 (citing Hudson v. McMillian, 503 U.S. 1, 6 (1992)). In addition, the trier of fact must take into consideration the need to "act quickly and decisively." Id.

In light of the liberal pleading standards established in Federal Rule of Civil Procedure 8(a), Plaintiffs are required to provide only a "'short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957). Plaintiffs allege Officer Ramirez used excessive and deadly force on the deceased with deliberate indifference. See Plaintiffs' Complaint, at ¶ 30 [Dkt. No. 1]. Further, they allege Officer Ramirez shot and killed Gonzalez while he was handcuffed to a hospital bed. These facts, if taken as true, certainly present a potential constitutional violation. Defendants, in essence, argue that in order to survive a Motion to Dismiss, Plaintiffs are required to plead facts with such specificity as to address the factors the Court will ultimately use to determine whether a constitutional violation actually occurred. Many of the material facts needed to make such a determination would be likely revealed only after some discovery and further investigation on the part of the Plaintiffs. Accordingly, Defendants' Motion to Dismiss Plaintiffs' Fourteenth Amendment claim is **DENIED**.

6

### Section 1983 Claims Against the City of La Feria

Plaintiffs allege that:

> [t]he Governmental Defendants have a custom, pattern, and practice of assaults of persons in custody like Gustavo Gonzalez by their uniformed officers in violation of their constitutional rights, which is so widespread, pervasive, and well-settled that it amounts to an official county custom or policy, which was the moving force behind the deprivation of Gustavo Gonzalez' [sic] Constitutional rights. It further appears that governmental Defendants did not adequately train and supervise their officers, which also proximately caused the deprivation of Gustavo Gonzalez' [sic] Constitutional rights.

Plaintiffs' Complaint, at ¶ 28 [Dkt. No. 1]. Defendants argue Plaintiffs' allegations are merely conclusory statements and are without proof or facts to support the claims. See Defendants' Motion to Dismiss [Dkt. No. 2].

The Fifth Circuit has recently clarified that to prove municipal liability under section 1983, three elements are required: (1) a policymaker, (2) an official policy, and (3) a violation of a constitutional right whose "'moving force' is the policy or custom." Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001). An official policy may be established by proving there is a persistent and widespread practice that constitutes a custom representing a municipal policy. See Webster v. City of Houston, 735 F.2d 838, 841 (5th Cir.) (per curiam), aff'd in relevant part on rehearing, 739 F.2d 993 (5th Cir. 1984) (en banc). A single incident, however, will often be inadequate for inferring a custom unless the actors involved have official policy-making authority. See Worsham v. City of Pasadena, 881 F.2d 1336, 1339-40 (5th Cir. 1989) (citations omitted). Furthermore, the policymaker(s) must make a deliberate choice to follow a course of action from other alternatives that leads to a constitutional violation. See City of Canton, Ohio v. Harris, 489 U.S. 378, 389 (1989) (quoting Pembaur v. City of Cincinatti, 475 U.S. 469, 483-84 (1986)). Similarly, in order to prove a municipality is liable under section 1983 for a policy of hiring or training, the plaintiff must show that (1) the training or hiring procedures of the policymaker were inadequate; (2) the policymaker was deliberately indifferent when he adopted the hiring or training policy; and (3) the inadequate hiring or training policy directly caused the plaintiff's injury. See Harris, 489 U.S. at 385-87. "Where the alleged policy is one of inadequate police training, the plaintiff can only satisfy the first element of municipal

7

liability if the failure to train satisfies the 'deliberate indifference' standard that applies to supervisor liability." Baker v. Putnal, 75 F.3d 190, 200 (5th Cir. 1996) (citing Benavides v. County of Wilson, 955 F.2d 968, 972 (5th Cir. 1992)).

The Court agrees that the Plaintiffs have presented only a conclusory statement concerning a widespread custom of assaulting detainees, which allegedly gave rise to the violation of Gonzalez's constitutional rights. The Court is aware of the liberal pleading requirements of Federal Rule of Civil Procedure 8(a) and the Supreme Court's decision to abolish a heightened pleading requirement for section 1983 claims against municipalities. See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 164 (1993). Nevertheless, Plaintiffs have failed to allege specific facts to support claims that (1) a government actor with policymaking authority established such a policy, (2), there is a widespread custom of assaulting detainees like Gonzalez, (3) the policymaker adopted inadequate training or hiring procedures in which he was deliberately indifferent, and (4) these training or hiring procedures caused constitutional injury to Gonzalez. Were the Court to determine that Plaintiffs had adequately presented their claims against the City, almost any claim for constitutional violations under section 1983 brought against an individual could also be brought against a municipality if the plaintiff made even a vague and incomplete statement that a policy exists that is the "force behind" the constitutional violation at issue. Defendants' Motion to Dismiss the section 1983 claims against the municipality, therefore, is **GRANTED**, and these claims are **DISMISSED WITHOUT PREJUDICE**. Plaintiffs, therefore, are free to seek leave from the Court to amend their complaint if they wish to supplement these factual allegations.

### Claims Under the Texas Tort Claims Act

Defendants argue Plaintiffs have failed to properly allege a claim under the Texas Tort Claims Act ("TTCA"). Additionally, they argue Plaintiffs' claims fall outside the limited waiver of the Act.

As a general rule, governmental entities are immune from tort liability under the doctrine of sovereign immunity unless the legislature has explicitly waived immunity. See

8

Harris County v. Dillard, 883 S.W.2d 166, 168 (Tex.1994). The TTCA, however, waives sovereign immunity for personal injury "caused by a condition or use of tangible personal or real property." Tex. Civ. Prac. & Rem.Code Ann. § 101.021(2) (Vernon 1999). In order to prove a negligence claim against the City, Plaintiffs must prove the injuries were "caused by a condition or use of tangible personal property." Dallas County Mental Health & Mental Retardation v. Bossley, 968 S.W.2d 339, 343 (Tex. 1998). In order to waive immunity, this requirement of the TTCA must be satisfied. See Texas Parks & Wildlife Dep't v. Garrett Place, Inc., 972 S.W.2d 140, 143 (Tex. App. -Dallas 1998, no pet.) ("[T]he injury must be proximately caused by the condition or use of the property."). Where the claimant fails to meet this burden, the City's immunity will remain in place. See Siders v. State, 970 S.W.2d 189, 192 (Tex. App.-Dallas 1998, pet. denied). The element of causation is not met simply because the property furnished the condition that created the injury. See Bossley, 968 S.W.2d at 343; Garrett Place, 972 S.W.2d at 143.

Unlike federal section 1983 claims, under the TTCA a governmental entity may be liable for its employee's negligence under the respondeat superior theory. See DeWitt, 904 S.W.2d 650, 653 (Tex. 1995). Respondeat superior creates liability for the government employer who is responsible for acts of the employee when the plaintiff alleges "(1) that the property was used or misused by a governmental employee acting within the scope of his or her employment and (2) that the use or misuse of the property was a contributing factor to the injury." Holland v. City of Houston, 41 F. Supp.2d 678, 711 (S.D. Tex. 1999) (citing Smith v. Tarrant County, 946 S.W.2d 496, 501 (Tex. App. -Fort Worth 1997, writ denied) (citation omitted)). Finally, the negligence of the governmental employee must occur under circumstances where private liability would also arise. See Salcedo v. El Paso Hosp. Dist., 659 S.W.2d 30, 32 (Tex. 1983). When the theory of respondeat superior is used, the employer may use any affirmative defense, such as official immunity, that is available to the employee. See id. An employee may have official immunity even when he was negligent in performing his duties. See Guevara, 911 S.W.2d 901, 904 (Tex. App.-Waco 1995, no writ).

Frankly, the Court has had difficulty deciphering exactly what Plaintiffs are pleading under the Texas Tort Claims Act. First, Plaintiffs allege that "[u]nder state law, the

governmental Defendants are charged with the non-delegable duty of exercising supervision and control over the correctional facilities, including VBMC." Plaintiffs' Complaint, at ¶ 34 [Dkt. No. 1]. Plaintiffs allege the City breached affirmative duties imposed by section 351.041(b) of the Texas Local Government Code, which requires the Sheriff to exercise supervision and control over jails. See Tex. Loc. Gov't Code Ann. § 351.041(b) (Vernon 1999). Plaintiffs further allege the City and its subordinates "acted with deliberate indifference to the welfare of . . . the deceased." See Plaintiffs' Complaint, at ¶ 34. Plaintiffs argue the City's failure to provide proper training and supervision to Officer Ramirez and others in his position, amounted to a "deliberate indifference to the safety of persons detained . . . ." Id. at ¶ 35. Plaintiffs make the same allegations under a respondeat superior theory arguing that Ramirez acted negligently while acting within the scope of his employment and in the course of carrying out his official duties. See id. at ¶ 37.[3]

Plaintiffs have presented their negligence claims under the TTCA, but have used language that connotes an intentional tort. Although, as discussed previously, the TTCA provides for a limited waiver of governmental immunity under certain circumstances, claims "arising out of assault, battery, false imprisonment, or any other intentional tort" are not covered by this waiver. See Tex. Civ. Prac. & Rem. Code § 101.057 (Vernon 1999). Plaintiffs cannot circumvent this exception to the waiver of immunity by couching their claim in negligence. See Holland v. City of Houston, 41 F. Supp.2d 678, 712 (S.D. Tex. 1999); Drain v. Galveston County, 979 F. Supp. 1101, 1104-05 (S.D. Tex. 1997). Plaintiffs

---

[3]It is unclear why Plaintiffs have also brought a claim for negligence, under a separate heading, against the City when they have already alleged negligence under the Texas Tort Claims Act. See Plaintiffs' Complaint, at § XII [Dkt. No. 1]. Nevertheless, for the same reasons, Plaintiffs have failed to state a claim for negligence against Officer Ramirez in his individual capacity. Section 101.106 of the Texas Tort Claims Act provides derivative immunity to an employee when the claim arises from an intentional tort that is expressly excluded by the TTCA. See Davis v. Mathis, 846 S.W.2d 84, 88 (Tex. App. --Dallas 1992, no writ). "The purpose of § 101.106 is to protect government employees from individual liability for acts or omissions where a claim based upon the same facts is made against their employers under the [TTCA]." Gonzalez v. El Paso Hosp. Dist., 940 S.W.2d 793, 795 (Tex. App.–El Paso 1997, no writ).

10

repeatedly used language that indicates the actions or policies of the City and Officer Ramirez's actions were intentional. Indeed, the facts and allegations of excessive force describe actions that were deliberate and intentional and not merely negligent. Plaintiffs do not allege that Officer Ramirez's actions were inadvertent and that he did not intend to shoot Gonzalez. Rather, they allege Ramirez and the City acted with deliberate indifference. As a result, Defendants' Motion to Dismiss is **GRANTED** with respect to Plaintiffs' claims under the Texas Tort Claims Act, and these claims are **DISMISSED WITHOUT PREJUDICE.**

### Claims Against the La Feria Police Department

The La Feria Police Department is a department of the City of La Feria, and it has no capacity to sue or be sued. See Hutchison v. Brookshire Brothers, Inc., 222 F. Supp. 2d 809, 825 (E.D. Tex. 2002). See also Darby v. Pasadena Police Department, 939 F.2d 311, 313 (5th Cir. 1991) (holding that without a showing that Texas state law grants the police department a separate legal existence from that of the county, the police department is not a proper party to the suit). Plaintiffs have failed to demonstrate the City of La Feria has granted the La Feria Police Department the capacity to sue or be sued. Defendants' Motion to Dismiss Plaintiffs' claims as to the police department is **GRANTED**, and the claims are **DISMISSED WITH PREJUDICE**. Any claims against the La Feria Police Department will be construed as claims against the City of La Feria.

### Claims Against Defendant Officer Gerardo "Jerry" Ramirez in his Official Capacity

Plaintiffs bring section 1983 claims against Officer Ramirez in his official capacity. It is redundant to bring these claims against both the City and Officer Ramirez in his official capacity because these claims are the equivalent of bringing claims against the City. See, e.g., Hafer v. Melo, 502 U.S. 21, 25 (1991). See also Baker v. Putnal, 75 F.3d 190, 195 (5th Cir. 1996). The claims brought against Officer Ramirez in his official capacity are **DISMISSED WITH PREJUDICE.**

11

### Defendant Officer Ramirez's Right to Qualified Immunity

"Qualified Immunity 'reconcile[s] two competing interests. One interest is the compensation of persons whose federally protected rights have been violated. Opposing this is the fear that personal liability will inhibit public officials in the discharge of their duties.'" Foster v. City of Lack Jackson, 28 F.3d 425, 428 (5th Cir. 1994) (citing Johnston v. City of Houston, 14 F.3d 1056, 1059 (5th Cir.1994)); accord, Spann v. Rainey, 987 F.2d 1110, 1114 (5th Cir.1993)). This immunity shields government officials who are performing discretionary duties from liability "unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Babb v. Dorman, 33 F.3d 472, 477 (5th Cir. 1994) (quoting Jacquez v. Procunier, 801 F.2d 789, 791 (5th Cir.1986); Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). See also Kipps v. Caillier, 197 F.3d 765, 768 (5th Cir. 1999).

In analyzing a claim for qualified immunity, the Court must first determine whether the alleged facts, taken as true, demonstrate the official's conduct violated a constitutional right. See Saucier v. Katz, 121 S.Ct. 2151 (2001). See also Williams v. Bramer, 180 F.3d 699, 702 (5th Cir.), clarified on other grounds, 186 F.3d 633 (5th Cir. 1999). Only if a violation is established will the Court continue to analyze whether the official's acts were "objectively reasonable in light of clearly established law." Thompson v. Upshur County, Texas, 245 F.3d 447, 457 (5th Cir. 2001). See also Kipps, 197 F.3d at 768 (citing Wilson v. Layne, 526 U.S. 603, 609 (1999)).

Plaintiffs allege Officer Ramirez used excessive and deadly force with deliberate indifference on the deceased. See Plaintiffs' Complaint, at ¶ 30 [Dkt. No. 1]. On the face of this pleading, Plaintiffs have alleged, albeit in a general way, a constitutional violation under the Fourteenth Amendment. Still remaining, however, are issues concerning whether Defendants' acts were objectively reasonable in light of clearly established law. As Plaintiffs have not yet responded to Officer Ramirez's defense of qualified immunity, the Court cannot determine whether immunity is appropriate on a Motion to Dismiss. Defendants' Motion to Dismiss on the grounds of qualified immunity is therefore **DENIED**.

In the alternative, Defendants request the Court to order Plaintiffs to respond to

12

Officer Ramirez's affirmative defense of qualified immunity. Plaintiffs are required to file a short and plain statement in their complaint, "that rests on more than conclusions alone." Schultea v. Wood, 47 F.3d 1427, 1433 (5th Cir. 1995) (en banc). The Court may then, in its discretion, insist that the Plaintiffs file a reply tailored to the defense of qualified immunity. Id. "Vindicating the immunity doctrine will ordinarily require such a reply, and a district court's discretion not to do so is narrow indeed when greater detail might assist." Id. at 1433-34. The reply must be tailored to the assertion of qualified immunity and fairly engage its allegations. Id. at 1433. See also Todd v. Hawk, 72 F.3d 443, 446 (5th Cir. 1995). A Federal Rule of Civil Procedure 7(a) reply is the preferred procedure prior to consideration of a motion to dismiss on grounds of qualified immunity. See Schultea, 47 F.3d at 1433-34. See also Jacobs v. City of Chicago, 215 F.3d 758, 775 (7th Cir. 2000). The Court, therefore, **ORDERS** Plaintiff to submit to the Court a Rule 7(a) reply directed to Officer Ramirez's defense of qualified immunity no later than 3:00 p.m. on Monday, March 10, 2003.

DONE at Brownsville, Texas, this 10th day of February, 2003.

Hilda G. Tagle
United States District Judge