IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
ENTERED

MAY 2 6 2004

Michael N. Milby, Clerk of Court
By Deputy Clerk _____

| | | |
|---|---|---|
| MARY E. CARRANZA, Individually and as Next Friend of ANGEL MATTHEW GONZALEZ, GUSTAVO GONZALEZ, JR., and ALYSSA LAUREN GONZALEZ, Minor Children, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF LA FERIA, TEXAS, et al., <br><br> Defendants. | § § § § § § § § § § § § § § | CIVIL ACTION NO. B-02-180 |

## ORDER

BE IT REMEMBERED, that on May 26, 2004, the Court considered and **DENIED** the Plaintiffs' and Intervener's Motion for Reconsideration [Dkt. No. 49].

### I. Factual and Procedural Background

Mary E. Carranza and Celia Muniz Gonzalez, the deceased's spouse and mother respectively, and the deceased's minor children brought this lawsuit alleging constitutional violations under 28 U.S.C. § 1983 and violations of the Texas Tort Claims Act ("TTCA"). See Plaintiffs' First Amended Original Complaint, [Dkt. No. 29]. In addition, Gustavo Gonzalez, the father of the deceased, intervened in this suit under the Texas Wrongful Death Act, and also alleged constitutional violations under section 1983 and violations of the Texas Tort Claims Act. See Intervener's First Amended Original Complaint [Dkt. No. 28].[1]

Plaintiffs originally alleged that on September 17, 2000, the deceased, Gustavo Gonzalez, was arrested for evading arrest by officers of the La Feria, Texas, Police

---

[1] For the purpose of this opinion, the term "Plaintiffs" refers to both the plaintiffs and the intervener.

1

Department. Plaintiffs' Original Complaint, at ¶ 17 [Dkt. No. 1]. During this arrest, Gonzalez was injured and subsequently taken to VBMC for treatment. Gonzalez remained in custody under police guard while he underwent treatment at Valley Baptist Medical Center ("VBMC").[2] On September 19, 2000, La Feria Police Officer Gerardo "Jerry" Ramirez was the posted guard on duty. Early in the morning on this date, Officer Ramirez and Gonzalez became involved in an "altercation," and Gonzalez was shot several times resulting in his death. Id. at ¶ 22. The parties agree that during this physical encounter, Gonzalez was handcuffed to his bed.

In their original petition, Plaintiffs and Intervener alleged the City of La Feria, Texas, the La Feria Police Department, Officer Ramirez in his official and individual capacity, and VBMC violated the deceased's Fourth, Eighth, and Fourteenth Amendment rights while the deceased was in custody. This Court dismissed with prejudice all of Plaintiffs' Eighth and Fourth Amendment claims, all claims against the La Feria Police Department, and all claims against Defendant Officer Gerardo "Jerry" Ramirez in his official capacity. See Court's Order, February 10, 2003 [Dkt. No. 21]. Additionally, the Court dismissed without prejudice claims against the City of La Feria, which included claims under section 1983 and the Texas Tort Claims Act. Plaintiffs filed an amended original complaint in which they reasserted claims against the City, and alleged VBMC was negligent. See Pls' First Amended Original Complaint, at ¶ 44 [Dkt. No. 29]. Prior to issuing its summary judgment order, the Court was informed that Plaintiffs had settled all claims against Defendants City of La Feria, Texas, and Officer Ramirez in his individual capacity. As a result, at the time the Court ruled on Defendant VBMC's Motion for Summary Judgment, only Plaintiffs' claim of negligence against VBMC remained.

The Court granted VBMC's Motion for Summary Judgment on the basis that Plaintiffs and Intervener had not presented any expert evidence on the standard of care required of a hospital under the circumstances presented in this case. Plaintiffs had not designated any experts, and after reviewing Plaintiffs' witness list, which accompanied their

---

[2]Defendants contend the deceased was a suspect in a murder, which necessitated 24-hour watch over him in the hospital.

Joint Pretrial Order, the Court determined that no expert witness on the standard of care was listed. Without such a designation, or some response by the Plaintiff arguing either that an expert was not needed or that Plaintiffs intended to call an expert designated by the Defendants, the Court concluded that Plaintiffs had not met their burden in producing evidence of an essential element–that is, evidence of the standard of care for patient safety and hospital security for patients under policy custody. The Plaintiffs had every opportunity to come forward with such evidence, and the Court could only assume their decision to not do so was intentional or even strategic in some way.[3]

In its decision, the Court recited the standard for summary judgment, which included a discussion concerning the fact that Plaintiffs and Intervener had not filed a response to VBMC's Motion for Summary Judgment. As the Court then recited, Local Rule 7.4 states that failure to respond to such a motion is interpreted as a representation of no opposition. Nevertheless, a Court cannot grant summary judgment simply because there has been no opposition to the motion. Hibernia Nat'l Bank v. Admin. Cental Sociedad Anonima, 776 F.2d 1277, 1279 (5th Cir. 1985) (citation omitted). Stated differently, the Court may not issue a default summary judgment. The Court may, however, accept as undisputed the movant's version of the facts and grant summary judgment where the movant has met his initial burden of making a prima facie showing of his entitlement to summary judgment. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986). If the movant fails to meet his initial burden, the nonmovant is not required to respond to the motion. See John v. State of Louisiana (Board of Trustees for State Colleges and Universities), 757 F.2d 698, 708 (5th Cir. 1985). But, once a movant meets his initial burden, the nonmovant is not permitted to rest on the "mere allegations of his pleadings." Isquith for and on Behalf of Isquith v. Middle South Utilities, Inc., 847 F.2d 186, 199 (5th Cir. 1988). See also Fed. R. Civ. Pro. 56(e).

---

[3] Defendant VBMC also argued the Plaintiffs lack expert testimony to prove the deceased suffered from a serious mental illness. See Defendant VBMC's Motion for Summary Judgment, at p. 2 [Dkt. No. 34]. The Court did not reach this issue because Plaintiff had failed to provide expert testimony on the threshold issue of the standard of care.

## II. Standard for Reconsideration

The Court issued its order granting summary judgment in favor of Defendant VBMC on March 2, 2004. On March 12, 2004, Plaintiffs and Intervener filed their motion for reconsideration and sought leave to file a response over 8 months after Defendant VBMC filed its motion for summary judgment in September, 2003. The Federal Rules of Civil Procedure do not recognize a Motion for Reconsideration per se. See Lavespere v. Niagara Mach. & Tool Works, Inc., 910 F.2d 167, 173 (5th Cir. 1990), abrogated on other grounds, Little v. Liquid Air Corp., 37 F.3d 1069, 1075 n.14 (5th Cir. 1994) (en banc). The Court will consider the Motion as one to "alter or amend the judgment" under Federal Rule of Civil Procedure 59(e) if it is filed within ten (10) days after the Court entered final judgment. See id. See also Fletcher v. Appel, 210 F.3d 510, 512 (5th Cir. 2000). Motions for Reconsideration are generally disfavored and are not proper tools "to introduce evidence that was available at [the time of the summary judgment motion] but was not proffered, to relitigate old issues, to advance new theories, or to secure a rehearing on the merits." Fontenot v. Mesa Petroleum Co., 791 F.2d 1207, 1219 (5th Cir. 1986). Generally, a Motion for Reconsideration may be granted under Rule 59(e) if the movant shows: (1) the motion is necessary to correct a manifest error of fact or law; (2) the movant presents newly discovered or previously unavailable evidence; (3) the motion is necessary in order to prevent manifest injustice; or (4) the motion is justified by an intervening change in the controlling law. Fields v. Pool Offshore, 1998 WL 43217, *2 (E.D. La. Feb. 3, 1998), aff'd 182 F.3d 353 (5th Cir. 1999).

## III. Analysis

In their motion for reconsideration, Plaintiffs and Intervener provide no other reason for their failure to file a response except to explain that they relied on their pleadings –a reason that is expressly prohibited by case law and Federal Rule of Civil Procedure 56. See Plaintiffs' and Intervener's Motion for Reconsideration of VBMC's Motion for Summary Judgment [Dkt. No. 49]. Moreover, Plaintiffs and Intervener do not contend that they were unaware that VBMC had filed a motion for summary judgment, nor could they make such a contention because all parties signed and approved a joint pretrial order that listed the pending motion for summary judgment.

The cases Plaintiffs and Intervener now cite to support their argument that expert testimony is not necessary in this case because their claim against VBMC is a straight negligence claim instead of a medical malpractice claim are unpersuasive. Plaintiffs and Intervener stated in their motion, "the position that the standard of non-medical, administrative, ministerial, or routine care at a hospital need not be established by expert testimony because the jury is competent from its own experience to determine and apply such a reasonable care standard is well settled in Texas law." Pls' and Intervener's Motion for Reconsideration, at p. 4 (citing, e.g., Mills v. Angel, 995 S.W.2d 262, 268 (Tex. App. - Texarkana 1999, no pet.). As a general rule, Plaintiffs and Intervener are correct. However, Plaintiffs and Intervener neglect to mention that in Mills, the very same case they cited to support their position, the Court of Appeals of Texas held that expert testimony *was* required "to shed light" on the standard of care required of a hospital "in the formulation or enforcement of it [sic] policies or procedures, in requiring continuing medical education, in peer review, [and] in credentialing." Mills, 995 S.W.2d at 278. There is no bright-line rule, as Plaintiffs and Intervener seem to suggest, that expert testimony is unnecessary to prove a hospital was negligent when the claim does not involve medical malpractice.

Plaintiffs claim VBMC was negligent when the hospital failed to use reasonable care in determining which safety and security measures should be used by VBMC staff and law enforcement guarding the deceased. See Pls' First Amended Original Complaint, at ¶ 44 [Dkt. No. 29]. Further, Plaintiffs asserted that VBMC had a duty to use reasonable care in formulating and implementing policies designed to protect the safety of its mentally ill patients and patients under police custody, in training and supervising its employees, and in determining what medical history information should be disclosed to city police officers guarding patients, such that proper measures can be taken by the law enforcement agency to guard the patients. The policies and procedures at issue, similar to those policies and procedures at issue in the Mills case, go far beyond the administrative and ministerial duties Plaintiffs reference. Indeed, a cursory glance at the exhibits Plaintiffs and Intervener attached to their late-filed response appears to show that the evidence addresses what VBMC did and would do under similar circumstances, but not what an ordinary hospital

would do in similar circumstances.[4] Thus, it is questionable whether Plaintiffs and Intervener have even now presented evidence on the threshold issue of the hospital's standard of care. See, e.g., Mills v. Angel, 995 S.W.2d 262, 267 (Tex.App.–Fort Worth 1997, no pet.); Bradford v. Alexander, 886 S.W.2d 394, 396 (Tex.App.–Houston [1st Dist.] 1994, no writ).

Furthermore, as the Court noted in its order of summary judgment, had Plaintiffs and Interveners wished to disabuse Defendant VBMC of its misunderstanding of Plaintiffs' and Intervener's claim, they had ample opportunity to do so. As Plaintiffs and Interveners have now stated in their motion for reconsideration that they did not respond to the motion because they chose to rely on their pleadings, it is clear they are informing the court that their decision was strategic. Once that decision was made, the Court will not now allow them to back pedal because they are unhappy with the outcome. Strategic choices do not constitute good cause, and Plaintiffs and Intervener have provided the Court with no other reason for their failure to respond that would warrant a reconsideration of the Court's earlier decision.

### IV. Conclusion

For the reasons discussed above, the Court **DENIES** Plaintiffs' and Intervener's Motion for Reconsideration and Motion for Leave to File Plaintiffs' Response [Dkt. No. 49-1 & 49-2]. Additionally, the Court **DENIES** Plaintiffs' and Intervener's Motion to Set Hearing [Dkt. No. 53].

DONE at Brownsville, Texas, this 26th day of May, 2004.

Hilda G. Tagle
United States District Judge

---

[4]The Court is not now assessing the evidence Plaintiffs and Intervenor attached to their response, nor is the Court amending its previous summary judgment order by making a further ruling that incorporates the evidence Plaintiffs and Intervener attach.